DECISION
Gregory M. Bowersock, dba Concept II and The Bachelor's Pad, defendant-appellant, appeals the May 9, 2000 judgment of the Franklin County Municipal Court finding that he breached his contract to pay Diane K. Blessing, plaintiff-appellee, certain monies due pursuant to her employment with appellant's businesses.
Appellant owns two companies: Concept II, an interior design company founded in February 1991; and The Bachelor's Pad; a 3,000-square-foot furniture showroom that opened in November 1996. In October 1996, appellee was hired by appellant as a store manager for The Bachelor's Pad, for which she was to be paid a base salary plus commission of one-percent of the gross sales. Appellee alleged that in July 1997, appellant told her that if she would perform certain duties for Concept II he would pay her a commission of one-percent of the gross sales of Concept II also. Appellant agreed that he and appellee had a casual conversation regarding a commission percentage for Concept II, but that it was contingent upon both companies performing well financially at some indefinite point in the future. Appellee's employment with appellant was terminated "on good terms" on February 27, 1999. Appellee alleged that at the time of her termination, appellant promised to pay her two weeks severance pay when he solved his "cash-flow problems," in addition to payment of all commissions due, totaling $5,580.37.
On July 27, 1999, appellee filed a complaint in the Franklin County Municipal Court, Small Claims Division, alleging appellant breached his contract to pay her the severance and commission amounts. The case was transferred from the Small Claims Division to the Civil Division on September 7, 1999. Also on September 7, 1999, appellant filed an answer and counterclaim, in which he denied the allegations in appellee's complaint and alleged that appellee wrote herself unapproved personal checks on the companies' accounts. Appellee moved to amend her complaint on October 6, 1999, and filed an amended complaint that same day, basically asserting the same allegations as contained in her original complaint in the Small Claims Division. A bench trial was held on May 5, 2000. On May 9, 2000, the trial court issued a decision, in which it ordered appellant to pay appellee $5,580.37 and dismissed appellant's counterclaims. The decision was journalized by way of judgment entry on May 15, 2000. Appellant appeals the trial court's judgment, asserting the following sole assignment of error:
 APPELLANT'S REQUEST FOR CASE REVIEW IS BASED ON THE BELIEF THAT THE JUDGMENT WAS GRANTED TO THE PLAINTIFF/APPELLEE WITHOUT A FAIR EVALUATION OF THE EVIDENCE. RECONSIDERATION FROM THE APPEALS COUCEL [sic] IS SOUGHT BECAUSE THE JUDGMENT WAS MADE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues in his sole assignment of error that the trial court's determination was against the manifest weight of the evidence. Generally, an appellate court will not reverse a civil judgment as being against the manifest weight of the evidence if there is competent, credible evidence going to all of the essential elements of the case. SeeChemical Bank of New York v. Neman (1990), 52 Ohio St.3d 204. In determining whether a jury's verdict is contrary to the manifest weight of the evidence, an appellate court does, to a limited extent, weigh the evidence and consider the credibility of the witnesses in order to insure against a miscarriage of justice. Nilavar v. Osborn (Apr. 7, 2000), Clark App. No. 99-CA-53, unreported. However, it is well-settled that the resolution of conflicting testimony is largely a matter for the trier of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.; see, also, Abram Tracy, Inc. v. Smith
(1993), 88 Ohio App.3d 253, 258.
To prove a breach of contract claim, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. Doner v. Snapp
(1994), 98 Ohio App.3d 597, 600. To prove the existence of a contract, a plaintiff must show that both parties consented to the terms of the contract, that there was a "meeting of the minds" of both parties, and that the terms of the contract are definite and certain. McSweeney v.Jackson (1996), 117 Ohio App.3d 623, 631. The terms of an oral contract must be established by oral testimony and their determination is a question for the trier of fact. Murray v. Brown-Graves Co. (App. 1922), 1 Ohio Law Abs. 167. However, "[e]vidence of the exact words of offer and acceptance in proof of an oral contract is not essential. It is sufficient if the words, deeds, acts, and silence of the parties disclose the intent to contract and the terms of the agreement." Rutledge v.Hoffman (1947), 81 Ohio App. 85, paragraph one of the syllabus; see, also, Stoops v. Miller (1994), 97 Ohio App.3d 265. Parties manifest their mutual assent either by making a promise or by beginning or rendering performance. Ford v. Tandy Transp., Inc. (1993), 86 Ohio App.3d 364, 380.
Appellant offers a bevy of arguments refuting appellee's testimony and various documents offered into evidence at trial. The crux of this case is whether appellant told appellee that she would receive a one-percent commission on the gross sales of Concept II beginning approximately August 1997, if she assumed duties at Concept II in addition to her duties at The Bachelor's Pad. With regard to this direct issue, appellant testified that only if both companies began to do well financially would he give appellee a one-percent commission on the gross sales of Concept II. He stated that no commencement date was discussed and that it was a casual comment. However, appellee testified that appellant's offer for the one-percent commission of gross sales for Concept II was stated in definite terms and was to begin immediately. Given the contrary testimony of the parties, the trial court was forced to determine each party's credibility. The trial court apparently chose to believe appellee's testimony. Given the trial court's superior position to observe the parties at trial and determine their credibility, we cannot find that the trial court erred in believing appellee's version of the events.
Both parties also presented contradictory testimony in attempt to indirectly demonstrate their respective perceptions of the alleged oral contract. Appellee attempted to buttress her assertion that the parties had entered into an oral contract regarding commissions for Concept II by showing that she took on additional duties as a result of the agreement. Appellee testified that previous to the alleged oral contract in August 1997, she only worked for The Bachelor's Pad and had no responsibilities at Concept II except to answer a mutual phone. She stated that after August 1997, she computerized Concept II's books and was responsible for keeping track of Concept II's payables, receivables, deposits, purchase orders, and job reports. However, appellant testified that he hired appellee to work for both companies in 1996. He also testified that before August 1997, appellee input figures and accounting numbers into the computer for both companies and, therefore, he would not have offered her any additional commission for Concept II because she was already working for both companies from the beginning of her employment. On cross-examination, appellee admitted that she completed a number of purchase orders for Concept II before the alleged oral contract, but claims the purchases were actually for The Bachelor's Pad and that they used Concept II's name only because it already had established vendors. She also admitted that she signed checks for Concept II before the alleged oral contract, but did so only to help appellant when he could not complete them. Again, the trial court apparently chose to believe appellee's testimony.
The parties also submitted documentary evidence to support their respective positions regarding the formation of the oral contract. Evidence was presented that on July 24, 1998, appellee wrote herself a commission check for $1,200 from Concept II. She stated that after she wrote the check, she told appellant that it was for her commission for Concept II and appellant did not tell her she was not authorized to be paid commissions for Concept II, did not ask her to pay back the money, and did not instruct her to never pay herself commissions again. Appellant stated that he believed the July 24, 1998 check was for appellee's commission for The Bachelor's Pad, not Concept II. He stated that he told appellee that she did not have to return the money only because he figured that in the end the monies would all "work out."
The trial court could have reasonably believed appellee's testimony that she was entitled to this amount and found appellant's apparent acquiescence to the payment demonstrated his acknowledgment of the agreement. Appellee testified that she laid the stub for the check on appellant's desk, just as she did with all other checks, and appellant never questioned the payment. She presented evidence that the $1,200 check was plainly reflected in the computerized books for Concept II as "commissions." Appellee also presented evidence that she wrote herself a second commission check for Concept II on October 9, 1998 for $300, which was also plainly reflected in the books for Concept II as "commissions." Thus, the trial court could have found that appellee's openness in paying herself the commissions, giving the payment stubs to appellant, and candidly earmarking them for Concept II in Concept II's books, were inconsistent with appellant's claim that appellee was "embezzling" money.
In an attempt to demonstrate appellee's untruthfulness, appellant testified that after appellee wrote her first Concept II commission check to herself, he told her that she should not do it again but, in fact, she wrote the second check anyway. However, appellee testified that appellant did not tell her to stop writing checks for her commissions until after the second Concept II commission check and that he only told her this because he did not think they had the money to pay the commissions. Appellee testified that appellant never told her that she was not entitled to the second commission check or never asked her to repay the money. As stated previously, the trial court was best able to view the credibility and demeanor of the witnesses and was in the best position to make a determination of which party was testifying truthfully.
Appellant further attempted to attack appellee's credibility by testifying that after he told appellee to stop writing personal commission checks to herself (after the July 24, 1998 check), appellee wrote herself a commission check for The Bachelor's Pad just two months later. He stated that he did not know that she wrote this commission check for herself after warning her, or he would have fired her. He also claimed that she wrote several checks to herself while he was involved in a project that kept him away from his store site for long periods of time. However, appellee pointed out that the returned checks for The Bachelor's Pad went directly to appellant's house, and she was clearly not attempting to hide her actions. The trial court could have found the fact that appellee wrote checks after appellant claimed to have told her to stop, especially in light of the fact that she did so openly and for an account for which appellant personally received the cancelled checks, demonstrated that appellant had not told her to stop writing her own commission checks after the July 24, 1998 check and acquiesced to the payments for the Concept II commissions.
Appellee also presented a letter she wrote to a mortgage company while she was applying for a home loan that stated her salary and that she was to be paid a one-percent commission from The Bachelor's Pad and Concept II. Although the exhibit was not signed, appellee said appellant did sign the original letter she submitted to the mortgage company, and her loan was approved. The trial court apparently chose to believe that appellant signed this letter that stated explicitly that appellee was entitled to the commissions for Concept II.
Appellee also presented at trial a letter she prepared and claimed to have faxed to Randy Carr, an accountant for appellant's companies, to send to the mortgage company that indicated she was to be paid commissions from both companies. Although Randy Carr testified that he never had seen the letter that appellee had allegedly sent to him for his signature, it was within the discretion of the trial court to determine credibility, and the court could have found appellee more credible. Although appellant attempts to further argue that an error as to appellee's salary in the letter demonstrates appellee's untruthfulness in attempting to mislead the mortgage company, appellee explained that it was a typographical error. She testified that she meant to state that her pay was $28,000 per year instead of $2,800 per month.
With regard to appellant's counterclaim, the court did not find his arguments compelling. On the issue of the Concept II commissions that appellant sought to recover as overpayments, we have already found above that the trial court did not abuse its discretion in finding that the parties had an oral agreement for the commissions. Appellant also claims that appellee took curtains from the store before she stopped working for him but never paid for the curtains or returned them. However, appellee testified that she never took any curtains from appellant. When faced with this conflicting testimony, the trial court apparently chose to believe appellee.
In sum, this case hinged almost exclusively on the credibility of the witnesses. As stated several times above, the lower court is better able than this court to observe a witness, determine his credibility, and assign the proper weight to his testimony. See Seasons Coal Co., supra. This court will not second-guess the lower court's determinations as to witness credibility or the weight to assign specific testimony. See Woodsv. Thompson (Oct. 10, 1989), Franklin App. No. 89AP-187, unreported. We find that there was competent, credible evidence going to all of the essential elements of the case to support the judgment of the court below. The trial court did not abuse its discretion in finding that the words, deeds, acts, and silence of appellee and appellant disclosed their intent to contract and the terms of their agreement.
We also note that appellant seems to make an argument that the trial court exhibited bias toward appellee's attorney, pointing to the statement by appellee's attorney (at the commencement of the case), in which he stated that he did not wish to give an opening argument based upon "our discussion prior to beginning of trial." Appellant claims this is based upon ex parte discussions between the court and appellee's counsel before his attorney arrived. However, appellee's counsel maintains that his comment was directed toward the brief description of the case he gave to the court upon the court's request (while waiting for the court reporter) and that appellant's counsel was present at the time. Appellee's version is supported by the trial court's statement at the beginning of trial: "Record shall also reflect that I've had some discussion with the parties as to the underlying causes of action." Therefore, this argument is without merit.
Appellant also asserts that he requested his attorney to raise several issues during the trial, reiterating specific statements he made to his attorney, but that his attorney did not raise any of these issues. These claims and alleged statements are not reflected in the record, thereby making review of those issues impossible at this juncture. Furthermore, this court will not second-guess what could be considered to be a matter of trial strategy. State v. Smith (1981), 3 Ohio App.3d 115. Therefore, this argument is also without merit.
Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Municipal Court is hereby affirmed.
KENNEDY and BRYANT, JJ., concur.